Good afternoon. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Larry Antelope. Three times, Larry has been in the position of disclosing his prosecuted sex offenses that may be part of his sexual history. And three times, he's invoked his Fifth Amendment right to remain silent. And three times, he's had his supervision revoked for doing so. The first time, he was placed back on probation. The second time, he was sent to prison for 30 months. And the third time, which brings us here today, he was sent to prison for 10 months. We believe that clearly violates his Fifth Amendment right to remain silent. The Supreme Court has most recently looked at this issue in the prison context in McCune v. Lyle, which we've briefed extensively. McCune basically takes an analysis and looks at, A, is there a compulsion? And if there is compulsion, it's a Fifth Amendment moment. And what the Supreme Court said in that case, in first four justices and then in Justice O'Connor's concurring opinion, was that there was no compulsion there because the consequence for not complying with the treatment disclosure obligation was not great enough in that it was just a removal and reduction of prison privileges. And therefore, there was no compulsion. And therefore, it wasn't a constitutional violation. Here, we're not talking about prison. We're talking about someone living outside. And although they are on supervision, they are free, relatively speaking, to go about their lives the way each of us do each day. And by remaining silent, Mariana Lopez ended up in prison. I had a question. Go ahead. What's the consequence if we were to decide that requiring him to speak violates his privilege? It goes back, are we sentencing? I mean, he certainly, at least it seems to me, couldn't have a right to get immunity for other crimes so that he can get treatment for one crime. That couldn't, at least to me, doesn't seem like that could possibly be right. So does it go back and the judge decides, say, you can't do this, so you decide whether he gets supervised release or not? No, Your Honor. We're not asking. So what do you guys say is the result? If you look at the Third Circuit case in Lee, that case said that somebody cannot have their supervision revoked for validly asserting their Fifth Amendment right. So your position is he gets to keep his supervision without treatment? No, Your Honor. Larry Antelope wants treatment. In fact, To keep it without, like, being required to go through a polygraph or whatever? Without being required to incriminate himself by disclosing his prior sexual history. On the other hand, if he did disclose it, then that would be a whole other ball of wax. Well, previously in Montana, this is a child pornography case, but as I'm sure you're all aware, in Montana, because of the federal jurisdiction and reservation, there are a lot of hands-on sex offenses. Up until Larry's case, we were able to enter into a stipulation with the government where they would provide immunity in the sex offender treatment context. Apparently they have, and they've expressed that they've changed their position. They're no longer willing to do that. What does the Chavez case, how does that play in as a Supreme Court? Chavez, as this Court's aware, because it came from the Ninth Circuit and was remanded back to the Ninth Circuit, established a substantive due process right not to have your Fifth Amendment rights violated in a way that either shocks the conscience or is at odds with ordered liberty. But they seem on the Fifth Amendment, at least the plurality seems to be saying there's no violation until you offer evidence of trial. So it would seem to suggest that there is no Fifth Amendment violation. If I can play it here. Am I right if you accept the plurality opinion? Playing law, Professor, Your Honor? Yeah. I think they... I'm playing advocate, which I know you're doing. They were anticipating... They were anticipating this case. And so at the beginning of their opinion, they said just what the Court has suggested. Later on, they paid lip service to Murphy, Minnesota v. Murphy, which we believe gives Larry the right to remain silent. But ultimately, that was only four judges that supported what the Court has suggested. So there is no decision on this from the Supreme Court. Here's kind of... I was trying to draw a map, which is not always so easy out of the Supreme Court. But it started with cases before Minnesota v. Murphy, Spivak, Turley, and those cases, which basically I thought answered the question. They said, well, if there were official questions in proceedings, you know, if it would be incriminating in future proceedings, then you have this Fifth Amendment violation. So then we had Minnesota v. Murphy, so things are going along okay. And then you have McCune. But it's not quite this case. It's just has a different sort of substantive result in terms of what he... what would be taken away from him. And then we have Chavez, but it doesn't overrule Spivak, Turley, et cetera. So what do we do with Chavez in conjunction with Spivak, Turley, and Minnesota v. Murphy? Your Honor, Chavez, to the extent it's relevant, is relevant on the substantive due process, right, which this court on remand said exists and sent it back to district court for factual determinations. So our position is if this isn't a Fifth Amendment right violation, which it clearly is because Larry's been revoked and now in prison twice for remaining silent, if it's not that, then it violates his substantive due process because it's just not part of our when taking away their liberty because they are remaining silent. That's how we believe Chavez applies in this case. Can I say that again? You're saying that it's a substantive due process or you're saying it's constitutional under the Fifth Amendment or it's the same? We believe it's both. And if the court isn't willing to support Larry's right to remain silent under the Fifth Amendment, we believe it shocks the conscience and it violates our concept of order of liberty for him to end up in prison because he refuses to incriminate himself. And that gets me back to my first point. Assuming that that were true, I'm not sure that it meets the same standard, but maybe it is. Does that mean he has a right to be out on parole on suspended release without the condition that's imposed? Or does it mean you have to have a resentencing? We believe... He has to decide what's the appropriate punishment if he's not agreeable to treatment with polygraph. We believe the court should order his release because he's been revoked in violation of his Fifth Amendment rights and either this court should tailor the supervision treatment condition or remand to the district court with some sort of outline to do so, ordering Larry into treatment. He wants treatment. Mike, do you want us to make some policy and start tailoring conditions and release rights? That's a startling thing to me because I didn't think that was our function. We're looking for error. And secondly, you know, I'm wondering about what the Supreme Court was doing when it tampered with the Fifth Amendment. If it's the Fifth Amendment, it's the Fifth Amendment. If they put a soft underbelly, they said now that you're in prison and because penological interests would require that you participate in this program, just because you give up a few rights, that doesn't violate the Fifth Amendment. I'm not too sure it's that limited. They've opened the door, as the Supreme Court's wanted to do, and we seem to be in the middle of Chavez, we seem to be in the middle of McCune, and we seem to be in the middle of Minnesota. And they've stuck us out on a limb here. Now, judges have raised a question here about Mr. Wright to parole supervised release because what happened is we're looking at a conviction, 20 months, for supervised release, but you can't get supervised release unless you go into the program. Well, he goes into the program and he said, tell me everything Fifth Amendment. So now he's got a choice. Nobody told him. Does he got a liberty in supervised release? Is that what it is? He has a Fifth Amendment right not to be forced to incriminate himself to comply with supervised release. Well, that's not what the Supreme Court said. The Supreme Court said you got a Fifth Amendment right, but if we want to take it away, we're going to take it away for a penological interest, and they did. And so if you want to limit it to what they said there to say it only will happen when you're in prison and when it only changes your conditions in prison life, fine. But I don't think that's what they did. The Supreme Court clearly said there is vulnerability to the Fifth Amendment when you get convicted and you're in a penological mode. We are now in a penological mode. I believe the word isn't penological. It's prison. And also it's four justices that said that. And here, with respect to compulsion, if you look at the government's brief, which is advocating this or jurisprudence under Minnesota v. Murphy, we can either give immunity now or we can force someone to incriminate themselves and we promise we won't use it against them later. They're conceding compulsion. They're conceding that he is being compelled. So perhaps the court is considering whether going from being outside of an institution to being revoked and placed in an institution is enough liberty interest being taken away that that creates a Fifth Amendment violation. But the government's conceding compulsion in its or jurisprudence. I guess what's really hanging me up is if, in fact, we were to conclude that the condition is unconstitutional, then I'm having trouble understanding why he would get to be on supervised release without that condition as opposed to just he gets a resentencing and all bets are off and the court has to understand he can't impose that condition and now the district court decides what's an appropriate punishment. I know that's not what your client wants, but it almost seems like it's like a mutual mistake if it's unconstitutional. It's almost like a mistake both parties are making at the time of the sentencing. First, Your Honor, getting back, I don't think I fully answered your initial question. We want treatment condition but with the provision that he doesn't have to incriminate himself. That's what we ask for. Second, if we were to go to resentencing without concrete guidance from this court, I'm afraid what's going to happen is Larry gets out at the end of July. I've spoken to him. If we're back in the same situation, he is going to again assert his Fifth Amendment rights, and so we'll then be petitioning the court for an expedited appeal process and we'll be right back here hopefully before the holidays. But, you know, when we normally have a sentencing thing, I mean, I don't know all the options. Maybe following up with what Judge Brunetti said, for us to sit up here and fashion him, if we were to agree with your legal argument, the fashion of relief would be very difficult. And normally we'll look at something and we'll say, well, you know, the judge was wrong on that legally. He thought he couldn't depart, for example. Or the judge thought the law was such and such, and that's not the law. So we sort of wiped the slate clean, in effect, and send them back. That doesn't mean they might not come back, but I'm having a little trouble understanding why, if we were to agree with you, we would go beyond simply saying that this condition is unconstitutional. And then the district court would figure it out with you and the prosecutor and everybody else. But I can't imagine our court, we don't even have the arsenal of tools to figure this out. That was pretty much the problem I was having, although Judge McKeown stated it better. It seems to me if you win, all you get here is we validate the sentence and send it back for resentencing. And the other thing is when you ask us to make the remedy or fashion some sort of remedy, you said something that really caused me some concern. You said that he wants rehabilitation without incriminating himself. That's contrary to what the record seems to show the so-called science is, and that is that they want him to tell everything to admit he's wrong as part of the treatment. And so for us to say, I'm going to look at this and say that we're going to run over what the so-called treatment experts are doing makes it difficult. So now we can't, I don't see where we can give you what you want, i.e., give me treatment, but I don't have to say anything. Number two, to fashion something that is acceptable to your client in the Fifth Amendment and at the still time tell the government, oh, you know, you're not going to give him immunity, but we're going to tell you you have to give him immunity. I don't think we can do any of those things. Your Honor. I'm not sure, but, I mean, that's my problem. Judge Brunetti, with respect to Larry accepting responsibility for his crime, this case is very distinct from Lyle. In Lyle, the issue there was Mr. Lyle would maintain his innocence, and so he wouldn't even accept responsibility for the reason he was imprisoned. I understand. I'm just talking about what's been argued here, that this program that he was put in, they said the reason we want you to take the polygraph and do all this stuff is because we can't help you unless you do this. I don't know whether that's right or wrong, but I'm just saying, I'm not too sure that I could look through this record and say, gee, you're right, we're going to let you do blank, blank, blank, or we're going to force the government to give you immunity. I don't think we can do any of that. I'm not sure, but I don't think we can. Well, I would not mind having that. I've been, maybe there's something I don't know, but I've been in a number of these where we thought a sentence was unlawful or unconstitutional. And all we've ever been able to do is say, okay, that sentence is out. It goes back for resentencing consistent with our opinion, which says you can't do what you did. But we never sentenced as an appellate court. So I don't see how we can give the relief that you guys are asking for. And I guess that it seems to me either we say Chavez and McEwen. McEwen, what's that? McEwen. McEwen. Unrelated to me. Chavez and McEwen maybe mean something different than the older Fifth Amendment cases and your client loses. Or we say your client wins because some other case wasn't overruled and this is an unconstitutional penalty, and it just goes back for resentencing. Those are the options that we've got. I would just refer the court to the York case in that we briefed that in York, I believe it was from the First Circuit. And there the district court in imposing the treatment condition said, quote, when submitting to a polygraph exam the defendant does not give up his Fifth Amendment rights, end quote. That's what we're asking for here. Larry will go to treatment because somehow it's clear from the district court's condition imposed that he maintains his Fifth Amendment rights as opposed to here where he keeps getting revoked for asserting his Fifth Amendment rights. I'd like to reserve my remaining time. Thank you. Ms. Hurd. Thank you. This case could probably take 20 minutes for us to go through the past history, which the court is very familiar with. But don't be misled about why it is that Mr. Antelope has been revoked on at least several occasions. And it's not just because he has not, quote, wanted to protect his Fifth Amendment rights and remain silent, but it's also because he violated a number of other conditions of his either probation in the beginning, his secondary sentence of probation, or his supervised release. And the judge made it very clear the last time we were here in Missoula arguing this very same issue about was he retaining Fifth Amendment rights, what was he doing in this case. And Judge Malloy made it very clear that this defendant was being revoked because he was refusing to follow the conditions of his lawful court order. He was refusing to do anything that he wanted to do unless it was on the terms he wanted to do it. And that's the problem with this case. Mr. Antelope says he wants treatment, but we've been up and down this case since October of the year 2000. It'll be four years this fall. And Mr. Antelope has not been in treatment. He has not shown he has really wanted to be in treatment unless it's on the conditions that he sets. And the bottom line is he doesn't get to set those conditions. And the Supreme Court has made that abundantly clear. What Mr. Antelope does not seem to understand is that Minnesota v. Murphy is crystal clear on the fact that there is an or choice here, that if in fact he is compelled to incriminate himself in sex offender treatment, then his answers are inadmissible against him in a later criminal prosecution. We have been through this in the first three appeals and now in these two appeals. This court is being asked to look at an issue that is not ripe, which would be determinative of your jurisdiction. You don't even have jurisdiction to look at this issue because Mr. Antelope basically has formulated his own version of the Fifth Amendment that says I can walk in and tell the court I'm not going to do what you tell me to do and you're not going to be able to do anything about it because I'm supposedly invoking my Fifth Amendment right to remain silent. The major problem with his argument now that's even worse than what it was the last time we were here on the first three appeals in front of a different panel before he was sent back for resentencing is the fact that we now have the Chavez case. And Chavez v. Martinez is absolutely devastating to Larry Antelope's position. And the holding, the bottom line holding of Chavez v. Martinez is well set forth. And it is that on page right 4 footnote 2 in that case it says, our holdings in these cases, and it goes through all of the cases that we've all talked about in all of our briefs, our holdings in these cases demonstrate that contrary to the Ninth Circuit view, mere coercion does not violate the text of the self-incrimination clause absent use of the compelled statements in a criminal case against the witness. And the case in Chavez, the court goes on and talks about all of the cases that we're all familiar with and very clearly says mere compulsion is not the issue because there is no criminal case in which this person was forced to, quote, be a witness against himself or be hoisted on the cruel prilemma, I think they called it, of self-accusation, perjury, or contempt. I mean, Chavez tells Mr. Murphy, you have not yet been in a position that you have had any Fifth Amendment problem because, in fact, you have not had a criminal case brought against you and have not had compelled statements used against you. And that's exactly what the government has been saying since the very beginning is that the cases all along since 1984 in Minnesota v. Murphy make very clear that if somebody is compelled to be a witness against themselves, absent a grant of immunity, those statements cannot be used. And we keep rehashing and rehashing and rehashing this issue because Mr. Antelope wants the appellate court to tell Judge Malloy, give this man immunity, let him be in treatment, let him be out in the community. And as this court has pointed out on the first part of oral argument, that is not something that this court has the power to do. This court has the power to look at those cases and say, his sentence is unconstitutional or his sentence is constitutional and upheld. This court cannot say, Larry Antelope, you are hereby granted immunity, go forth into sex offender treatment and sin no more. And that's what he wants. He wants to be able to pick and choose the conditions of his supervised release and of his probation in the beginning. And ironically, Mr. Antelope is the one who asked to be placed on probation. Mr. Antelope is the one who asked to be placed into treatment, knowing full well, he was going to be required to polygraph, that he was going to be required to disclose a sexual history, that he was going to be required to talk about this offense and any other offenses. He asked for a downward departure to probation, which the court gave him. This court reversed that as being an abuse of discretion and sent it back for resentencing. And by that point, the district court had seen the true colors of Larry Antelope, which was a person who wanted to set his own conditions and certainly wasn't going to follow what the court wanted him to do. We keep rehashing this issue over and over and over. And Minnesota versus Murphy made it clear. Chavez versus Martinez made it even more clear. There is this or choice. What about McEwen? I mean, if you look at it, McEwen looks exactly like his case, except for instead of shuffling to a different cell and not getting a TV, he has a very serious consequence, which is to get his supervised release revoked. But see, I don't agree that that's the condition, that that's what happens to him when he says his magic words that he has now memorized. I'm invoking my fifth amendment right to remain silent. He's saying to the court, I'm not doing what you told me to do. And the court is saying, you don't have the right to say, I'm just not going to comply with this. And I think McEwen versus Lyle talks about the fact that a valid conviction, which Larry Antelope has, and ensuing restrictions on liberty are essential to the fifth amendment analysis. And rehabilitation is a legitimate penological interest that must be weighed. And in this case, Larry Antelope is a convicted, untreated for almost four years, sex offender who was out walking around and managed for almost a full year on probation, not just once on probation, but revoked and put back on probation to successfully say, you know, I'm just not going to be involved in rehabilitation unless it's on my terms. And I think that McEwen versus Lyle is very clear about the fact that you can't do that. This is different because he is a convicted sex offender and he does have restrictions on his liberty. And the fact that he is out on probation, but has those conditions is a small amount different, but not a huge amount different than McEwen versus Lyle. So there's a little bit of, there was a little bit of difference in McEwen versus Lyle because of that issue. But then you came to the Chavez case, which followed it and Chavez made absolutely clear what the government has been saying all along, which is there was no criminal case. There was no use of compelled statements. You don't even have an issue to be resolving here. Is your argument, counsel, that he should, he wants treatment. So they put him into treatment and the conditions, as I remember it, you consult, you have to do all these disclosures and then there's polygraphs. Now let's assume he goes through all that. And at a certain point, he has said something that causes the government to say, well, we were wondering about this and they bring some charges. Now he's already told XYZ, the charges are brought on those, say it's another child molestation, whatever. There's an attempt to use those statements and at trial, they're attempting to use that as proof of his crime. And he would raise that he was compelled under the fifth amendment. Is that the way you see this? Him exercising his fifth amendment rights versus using it as a weapon against  That is absolutely it, Judge Brunetti. He's trying to use it as a shield or as a sword rather than a shield. And you have it exactly right. That's when his issue would come up. Is if Larry Antelope goes to sex offender treatment and he says to the polygrapher, you know what? I'm only doing this because Judge Malloy is making me do it. I want to remain silent, but I have to do this. Go ahead and polygraph me. He's polygraphed and he discloses a hands-on victim. So they start working in treatment on this hands-on victim. You know, they talk about it, they process through the issues and then they make a report. Because let's say it was a four-year-old child and social services goes and talks to the child. The child says, yep, Larry Antelope offended me. So the state of Montana says, we're going to prosecute Larry Antelope and we're going to use his disclosures in treatment. That's where Larry Antelope has a valid fifth amendment argument under Minnesota versus Murphy, because it is clear that the state of Montana or the federal government could not then use that because we said to him, you've got to do it in order to be rehabilitated. You've got to talk about it. He has his cart so far before his horse that this is all arguing about semantics. He says, this has all happened to me and this is terrible and it's because I've invoked my fifth amendment right, but that is not accurate. There's, there's another issue that's set forth in this case that's arguing about the conditions of release. And I think that those are also looked at under an abusive discretion standard here. And I think that the cases that the ninth circuit has already resolved, most specifically the newest United States versus Reardon case, upheld, uphold those conditions as being relevant and as being specific enough and necessary in terms of his supervision. And so unless there are any questions about the conditions of release argument that's being made, I think I'll just leave that to the briefs. What about, is it the gagly audio case with respect to the broad, any pornographic, if you would just comment, because I thought that would just like Reardon might cover the online access that the gagly audio would cover the, any pornographic and too broad. Exactly. And gagly audio, the only word that was used was pornographic. And when the objection was made at Mr. Antelope's sentencing to the word pornographic, the judge said, fine, if you don't understand it, let me tell you what I mean. No pornographic, no sexually explicit, no sexually oriented, no sexually stimulating. And he made it very, very, very clear what it was that he had in mind, um, in terms of the gagly audio case, that at least the word pornographic ought to be stricken. I think pornographic is surplus age, if nothing else. Um, if this court is concerned about that, that was my suggestion was under, um, quite gagly audio, uh, to strike the word pornographic, because certainly Mr. Antelope is on notice as to the other items that he's been prohibited from, um, being in possession of. But other than that, uh, his condition is in extremely, um, specific, as is the internet provision that's been approved in Reardon. Thank you. Counsel, can I ask one further question? This has been troubling me. Do you know of any case in a setting that there has been a conviction, and, uh, the matter now, the judge, uh, asked the, the probation officer to, uh, prepare a pre-sentence report, and in doing so, there's a consultation with the defendant. Is there any cases which show that the defendant has refused to cooperate, to give information to the, uh, the probation officer, and raise the Fifth Amendment right, and what the results of that have been? Do you know of any circumstances in that regard, in this sentencing process, in the pre-sentence report preparation? Well, Your Honor, I believe that there are cases from the Ninth Circuit that indicate, um, that during the preparation of a pre-sentence report, a defendant has the right to have his attorney present, um, and rely on the advice of that attorney. Um, but I couldn't cite you to any specific case right at the time. There aren't any cases that I'm aware of that say a defendant retains a Fifth Amendment right to not answer, um, questions about relevant conduct or things like that within the context of a pre-sentence report. Um, so I can't cite you to any specific cases that way. Okay. Do we have any other, are there some circuit cases, the Third Circuit or elsewhere, that have a situation, uh, more my, like Mr. Antelope's, where the court has determined that it has? You know, I have never found another circuit court case that's, that's just like Larry Antelope's. I simply have not. All right. It's not been raised in the two and a half years that we've been dealing with this. Thank you. Thank you. Um, I will hear then Mr. Antelope's counsel on rebuttal. Judge Brunetti, I think, uh, to respond to your last question, the Supreme Court's case in Mitchell came down, I believe in 1999, maybe 2000, 2001. If I remember right, the defendant in that case was being questioned regarding relevant conduct beyond the offense of conviction. The Supreme Court ruled, I believe it was a woman, she had the right to remain silent. So I think that somewhat answers your question. No, I understand the right to remain silent. I was wondering if, if, if then it proceeded to the next step, that somehow by remaining silent, they were deprived of the, of the, uh, the, uh, pre-sentence report process, et cetera. Because here, there's no question he has the right to remain silent. It's a question when he does that, what the consequences are. I can tell you in my practice, I routinely, I sit in on those interviews and routinely advise my clients, don't ask, answer non-specific questions. No, I was aware of that. I was just wondering if somebody had ever gone to the next step. That's all. I think it's somewhat accepted that there is no repercussion, but that's just in my practice. Sure, sure. The government's or jurisprudence where it's saying we can either give immunity or we can compel Larry to incriminate himself and entrust us later on. We won't use that against him. There, there's no basis for that. What it's saying is Murphy somehow gives the government the right to unconstitutionally compel information. What Murphy's saying is the government can either give immunity and for some weird sequence of events, information is disclosed and in retrospect it was compelled, then it can't be used against him. It doesn't mean it gives the government the right to forcefully, deliberately, consciously, proactively compel the self-incrimination, but that's what the government's maintaining. Moreover, the government's seizing upon one excerpt, a couple sentences in Murphy to support its position, and in our reply brief we have quote after quote after quote, and I'll just read one as an example. Quote, he was free to claim the privilege and would suffer no penalty as a result of his decision to do so. End quote. That's Murphy, 465 U.S. at 420. Repeatedly, Murphy said that if you remain silent, that you cannot have your revocation revoked, your supervision revoked. Why isn't Chavez, this whole line of cases is troubling because, of course, it's not clean. Right. But they do seem to be hitting us over the head a little bit in Chavez, saying, you know, you don't have a violation of the constitutional right until such point as you're actually compelled to be a witness, meaning you say we should, why shouldn't we trust the government? Well, maybe you shouldn't, but to the extent your client's rights are going to be violated, there is no violation until such point as they break the trust, is there? Your Honor, again, that's only four justices. Also, the quote that the government read from Chavez, our holding in these cases demonstrate that contrary to the Ninth Circuit view, mere coercion does not violate the text of the self-incrimination clause, absent use of the compelled statements in a criminal case against the witness. The key word is there is coercion. We're not talking about coercion. We're talking about unconstitutional compulsion. That is very important. Also, with respect to Lyle, if the government's right, and as some of the questions are suggesting, if the law is that. Wait, back up on your, on your last point, drawing a distinction between coercion and compulsion? Yes. In this context. The rationale of the Supreme Court seemed to be, and I grant it's a plurality and we have to deal with that, but if you accepted it as the opinion of a court for practical purposes, their rationale seems to be the Fifth Amendment right doesn't really arise until something is offered in testimony, that the privilege doesn't apply until then. So it's sort of like no problem under the Fifth Amendment until then, and maybe there's a due process right. That's different. But as to the Fifth Amendment, it's just not a problem until the testimony is served up at a trial. And to me, if that's the rationale, I don't see how it matters if it's compulsion or coercion, or some other device to extract a statement. Well, as I responded earlier, I think the Supreme Court is projecting, trying to anticipate this very issue, and those four justices have started a lobbying campaign, and I think they slyly used the word coercion, which is a lesser standard than compulsion, which has real meaning in this context. Okay. Also, why would the Supreme Court ever have gotten to its decision that it did in McCune v. Lyle? There, there was no one that said, hey, we already went to the Fifth Amendment moment because the guy kept his mouth shut and got booted out of the program. Instead, we've got to do what the government's saying should happen to Larry Antelope. It's earlier in time, isn't it? McCune is earlier in time than Chavez. Yes, that's correct. So, I mean, doesn't that answer why they have to say it? Because on that day, they hadn't thought of it or whatever. That is the law, though. They hadn't decided it. I mean, that case is far closer to the circumstances of this case. It was never suggested that the Fifth Amendment moment had not yet arrived. Could I just ask one more question? I just, you know, I can never count these people up when they give us all these shattered opinions, but trying to count these up, it seems in McCune, you know, you had 414, and we take Justice O'Connor under the traditional rules, and she kind of is the, I don't want to disrespect, but the least common, lowest common denominator, there becomes the opinion. What do you do? Plurality. Plurality. You know, it's the reality of the way that it's, you know, squished out. But in this one, I thought that the Justices joined on the Fifth Amendment, that there were, there's four on the whole opinion, and then you've got these concurrences, but that they're joining in that part two, which really is the Fifth Amendment analysis. Am I wrong on that? I think you are, and I believe it was Justice Souter, who had two parts to his opinion, and the second part was on the substantive due process. It was on, I think it was a single sentence, and that was the decision, the wholing of the court. So are there five Justices, then, at least joining in the language that the government read? No. There were four, I believe. I don't have the decision here, but that was Justice Thomas' decision. Okay. Well, I'm going to have to go back and make a little chart here. So thank you very much. All right. The case of United States v. Antelope is submitted. We wish you well, Ms. Hurd, with your recovery. Thank you. And we wish your prior counsel well with his new babies. We wish everyone in Montana well. So we are adjourned for this morning. Thank you. Thank you. All rise. We're adjourned. See you in July. Thank you. Thank you. Thank you.
judges: Brunetti, McKeown, Gould